UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-14361-CIV-GRAHAM
MAGISTRATE JUDGE P. A. WHITE

GLENN SMITH,                              :

    Plaintiff,                        :

v.                                        :          REPORT OF
                                                    MAGISTRATE JUDGE
JAMES MCDONOUGH, ET AL.,                  :

    Defendants.                       :
_____

## I.  Introduction

The plaintiff Glenn Smith, currently incarcerated at the Martin Correctional Institution ("MCI"), has filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 concerning events that occurred at the Okeechobee Correctional Institution ("OCI"). [DE# 1]. The plaintiff has been granted leave to proceed in forma pauperis. [DE# 4].

This cause is presently before the Court for initial screening pursuant to 28 U.S.C. §1915.

## II.  Analysis

As amended, 28 U.S.C. §1915 reads in pertinent part as follows:

    Sec. 1915 Proceedings in Forma Pauperis

                            \*   \*   \*

>    (e)(2) Notwithstanding any filing fee, or
>    any portion thereof, that may have been paid,
>    the court shall dismiss the case at any time
>    if the court determines that –
>
>    \* \* \*
>
>    (B) the action or appeal –
>
>    \* \* \*
>
>    (i)  is frivolous or malicious;
>
>    (ii) fails to state a claim on which
>    relief may be granted; or
>
>    (iii) seeks monetary relief from a
>    defendant who is immune from such
>    relief.

The standard for determining whether a complaint states a claim upon which relief may be granted is the same whether under 28 U.S.C. §1915(e)(2)(B) or Fed.R.Civ.P. 12(b)(6) or (c).  See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11 Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)").  When reviewing complaints pursuant to 28 U.S.C. §1915(e)(2)(B), the Court must apply the standard of review set forth in Fed.R.Civ.P. 12(b)(6), and the Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  In order to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. Arrington v. Cobb County, 139 F.3d 865, 872 (11 Cir. 1998).  An action is

considered "frivolous" if it is "without arguable merit either in law or fact."  Bilal v. Driver, 251 F.3d 1346, 1349 (11 Cir.), cert. denied, 534 U.S. 1044 (2001).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' Estelle v. Gamble, 429 U.S. 97, 106 (1979) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, the federal rules do require "a short and plain statement" of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  See Fed.R.Civ.P. 8(a); Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11 Cir. 2001), cert. denied, 534 U.S. 1129 (2002).  While notice pleading does not require the complainant to allege a fact to cover every element of a claim, "it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Id. (quotations and citations omitted).  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11 Cir. 1998).

   A.   Statement of Claims

   The plaintiff names the following defendants:

   1.   Florida Department of Corrections Secretary James McDonough
   2.   Former OCI Assistant Warden Stephen W. Kegerreis
   3.   OCI Sergeant B. Campbell

    4.    OCI Major Darryl Collins

The plaintiff raises the following allegations.

On December 20, 2003, Campbell retaliated against the plaintiff for exercising his right to free speech and to seek redress of unconstitutional conditions of confinement via grievances by issuing a false disciplinary report, and McDonough is responsible for Campbell's actions. Specifically, Assistant Warden Kegerreis directed Campbell to issue the retaliatory disciplinary report, and Rios and Collins violated the plaintiff's Fourteenth Amendment rights by finding him guilty of the alleged disciplinary violation and committing him to disciplinary confinement.

The plaintiff seeks to sue McDonough in his official capacity to challenge the constitutionality of the Florida Department of Corrections rule, Fla. Admin. Code R. 33-601.314, which forbids inmates from disobeying verbal or written orders of corrections officials, and to challenge the issuance of the disciplinary report as retaliatory in violation of his right to free speech under the First Amendment and the punishment as a violation of his Fourteenth Amendment right to due process.  He seeks an order expunging the disciplinary report from his prison record.

The plaintiff claims that Kegerreis, formerly at OCI and now at MCI, has a pattern of retaliating against inmates who file grievances, including orchestrating retaliatory transfers and directing subordinate officers to issue false disciplinary reports. As background, the plaintiff states that on November 3, 2003, he found a shank in his cell locker and reported it to an officer.  On December 12, 2003, the plaintiff and six other inmates were escorted to confinement. The plaintiff states that Coleman told the group of inmates that they were being placed in confinement as an

4

example to other inmates, in an effort for the administration to take control of the compound with regard to cell compliance, and they were being charged with disobeying a verbal order, but the nature of the order was not specified. The plaintiff challenged Coleman's failure to get comments and perceived illegal reason to place the inmates in confinement, and Coleman threatened to pepper spray him if he continued to complain. The plaintiff further claims that the "mass lock-up" took place to create bed space in general population for 6 inmates who were being released from disciplinary confinement, which serves as an example that the institution was unconstitutionally overcrowded.

On December 16, 2003, the plaintiff was allegedly served a "fabricated pretextual reprisal" disciplinary report for disobeying an order on December 12, 2003, written by CO Holmes (not a defendant). On December 18, 2003, CO Conrad (not a defendant) wrote a fabricated pretextual reprisal" disciplinary report for spoken threats, which Conrad allegedly told the plaintiff was in retaliation for the plaintiff's grievance concerning Conrad's unjustified use of force against the plaintiff on December 15, 2003.

The plaintiff states that on December 20, 2003, Kegerreis and Campbell turned off the heat in the confinement area, and it was very cold. Kegerreis and Campbell ordered inmates to unblock their cell vents, which they had blocked to restrict the flow of cold air. Kegerreis and Campbell verbally ordered the plaintiff to unblock his vent, and the plaintiff refused to do so until the heat was turned on. Kegerreis then ordered Campbell to give him a disciplinary report, and Kegerreis refused to give the plaintiff grievance forms until the vent was uncovered. The plaintiff was found guilty of the disciplinary infraction and was sentenced to 30 days confinement.

On January 20, 2004, CO Thompson (not a defendant) issued the plaintiff a disciplinary report for disrespect to officials, allegedly in retaliation for grievances the plaintiff had filed against Thompson. The plaintiff alleges that Kegerreis was behind the issuance of all of the disciplinary reports in an effort to have the plaintiff classified as close management and to have him transferred. The plaintiff claims that on February 3, 2004, Conrad told him the disciplinary reports were all issued in retaliation for filing grievances.

The plaintiff raises the following claims:

1. The December 20, 2003 disciplinary report, issued by Campbell at the directive of Kegerreis, was retaliatory and thus violated the plaintiff's First Amendment rights.

2. The Florida Department of Corrections' "disobeying order" rule is unconstitutional because it is vague and overbroad.

3. Defendants Rios and Collins violated his Fourteenth Amendment right to due process by finding him guilty of the December 20, 2003 disciplinary infraction and by not conducting a fair and impartial hearing.

<u>Retaliatory Disciplinary Report</u>

The plaintiff alleges that Kegerreis and Campbell violated his constitutional rights by retaliating against him for exercising his right to free speech. The plaintiff alleges specifically that on

6

December 20, 2003 Kegerreis directed Campbell to issue a false disciplinary report as a retaliatory measure.

Retaliation by prison officials against an inmate for filing administrative grievances is cognizable in a civil rights suit for damages. Wildberger v. Bracknell, 869 F.2d 1467 (11 Cir. 1989). Under certain circumstances, such retaliation may violate the inmate's First Amendment rights. Wright v. Newsome, 795 F.2d 964, 968 (11 Cir. 1986).

In the "free world" context, an act taken in retaliation for exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for different reasons, would have been proper. Adams v. James, 797 F.Supp. 940, 948 (M.D. Fla. 1992) (citing Mount Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274, 283 (1977)). A claim of retaliation is a question of causation, and the test applied in the "free world" context is a "but for" analysis. Adams, supra, 797 F.Supp. at 948 ("but for" the retaliatory motive, the incidents to which the plaintiff refers would not have taken place).

Certain means of "retaliation" may be so de minimis as not to inhibit or punish an inmate's rights of free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response. Borrowing from Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.), cert. denied sub nom. Employee-Officer John, # 1765 Badge Number v. Johnson, 414 U.S. 1033 (1977), Graham v. Connor, 490 U.S. 386, 396 (1989), notes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Similarly, not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment. By developing a standard of de minimis actions,

courts can screen out frivolous or non-meritorious claims of retaliation during the in forma pauperis complaint review under 28 U.S.C. § 1915.  In other words, the plaintiff must demonstrate that he suffered more than a de minimis inconvenience. American Civil Liberties Union of Maryland v. Wicomico County, 999 F.2d 780, 786 (4 Cir. 1993); see also Bart v. Telford, 677 F.2d 622, 625 (7 Cir. 1982)("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech [is] always actionable. . . .").

Here, the plaintiff admittedly refused to comply with the verbal order of Kegerreis and Campbell to unblock his vent. Despite the plaintiff's argument that he had a right not to unblock his vent because he was cold, and despite his background facts which he contends evidences a larger, grand scheme of retaliation, there is no dispute that the defendants specifically issued an order and the plaintiff intentionally disobeyed the order.  Hence, the plaintiff's argument that the disciplinary report was retaliatory has no merit, and the Court finds that there is no causal link between any alleged First Amendment activity and the issuance of the valid disciplinary report.  It is thus recommended that the claim that the disciplinary report was retaliatory be dismissed.

### Challenge to Disciplinary Proceedings

The plaintiff alleges that he was denied due process in connection with his disciplinary proceedings at OCI.

The plaintiff has stated no due process claim based on any improprieties in his disciplinary hearing that resulted in 30 days of isolation and no loss of gain time. A prisoner, "who has already been deprived of liberty, can be deprived further of his liberty, such that due process is required, when (1) a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, or (2) when the government has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Kirby v. Siegelman, 195 F.3d 1285, 1290-91 (11 Cir. 1999); Thomas v. Warner, 2007 WL 1600050 (11 Cir. June 05, 2007). The plaintiff's 30 days in isolation was not an excessive, atypical or significant hardship that would implicate the Due Process Clause. See Sandin v.. Conner, 515 U.S. 472 (1995); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11 Cir. 1998). The plaintiff's due process claim should therefore be dismissed.

## Constitutionality of Prison Rule

The plaintiff alleges that the Florida Department of Corrections rule, Fla. Admin. Code R. 33-601.314, which forbids inmates from disobeying verbal or written orders of corrections officials, is unconstitutionally vague and overbroad.

This Courts finds no constitutional infirmities in the challenged Department of Corrections rule. Preserving institutional order and discipline may require prison officials to adopt rules or policies that limit or reduce the constitutional rights retained by prisoners. Prison rules may burden inmates' constitutional rights when they are reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89

(1987).  Prison officials have wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.  Wilson v. Blankenship, 163 F.3d 1284 (11 Cir. 1998).  There is no question that a rule requiring inmates to comply with the verbal and written orders of prison officials is essential to operation of the states's prisons, and is absolutely necessary to preserve internal order and discipline and to maintain institutional security.  It is recommended that this claim be dismissed.

### III.  Conclusion

It is therefore recommended that the Complaint be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted, and the case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 25th day of June, 2007.

                                                    _____
                                                    UNITED STATES MAGISTRATE JUDGE


cc:   Glenn Smith, Pro Se
      DC# 880144
      Martin Correctional Institution
      1150 S.W. Allapattah Road
      Indiantown, FL 34956-4397